**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roshini Szarka,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Commissioner of the Social Security Administration,<br><br>　　　　Defendant. | CIV 14-8177-PCT-MHB<br><br>**ORDER** |

Pending before the Court is Plaintiff Roshini Szarka's appeal from the Social Security Administration's final decision to deny her claim for disability insurance benefits and supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

Plaintiff filed applications for disability insurance benefits and supplemental security income alleging disability beginning June 1, 2007. (Transcript of Administrative Record ("Tr.") at 16.) Her applications were denied initially and on reconsideration. (Tr. at 16.) Thereafter, Plaintiff requested a hearing before an administrative law judge. (Tr. at 16.) A hearing was held on September 20, 2012, (Tr. at 29-49), and the ALJ issued a decision finding that Plaintiff was not disabled (Tr. at 13-28). The Appeals Council denied Plaintiff's request for review (Tr. at 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III.  THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 1, 2007 – the alleged onset date. (Tr. at 18.) At step two, he found that Plaintiff had the following severe impairment: interstitial cystitis. (Tr. at 19.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 19.) After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). With the residual functional capacity to perform light work, the claimant is also able to perform the full range of sedentary work (20 CFR 404.1567(a) and 416.967(a))."[1]  (Tr. at 19-22.)  The ALJ determined that Plaintiff was able to perform past relevant work as a filing clerk, information coordinator, medical billing clerk, receptionist, and library clerk. (Tr. at 23.) Therefore, the ALJ concluded that Plaintiff has not been under a disability from June 1, 2007, through the date of his decision. (Tr. at 23.)

## IV. DISCUSSION

In her brief, Plaintiff contends that the ALJ erred by: (1) failing to properly consider her subjective complaints; (2) failing to properly weigh medical source opinion evidence; and

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 3 -

1  (3) failing to properly consider lay witness or third-party statements.  Plaintiff requests that
2  the Court remand for determination of benefits.

3        Plaintiff first argues that the ALJ erred in rejecting her subjective complaints in the
4  absence of clear and convincing reasons for doing so.

5        To determine whether a claimant's testimony regarding subjective pain or symptoms
6  is credible, the ALJ must engage in a two-step analysis.  "First, the ALJ must determine
7  whether the claimant has presented objective medical evidence of an underlying impairment
8  'which could reasonably be expected to produce the pain or other symptoms alleged.'  The
9  claimant, however, 'need not show that her impairment could reasonably be expected to
10 cause the severity of the symptom she has alleged; she need only show that it could
11 reasonably have caused some degree of the symptom.'"  Lingenfelter v. Astrue, 504 F.3d
12 1028, 1036-37 (9th Cir. 2007) (citations omitted).  "Second, if the claimant meets this first
13 test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony
14 about the severity of her symptoms only by offering specific, clear and convincing reasons
15 for doing so.'"  Id. at 1037 (citations omitted).   General assertions that the claimant's
16 testimony is not credible are insufficient.  See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir.
17 2007). The ALJ must identify "what testimony is not credible and what evidence undermines
18 the claimant's complaints."  Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).

19       In weighing a claimant's credibility, the ALJ may consider many factors, including,
20 "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,
21 prior inconsistent statements concerning the symptoms, and other testimony by the claimant
22 that appears less than candid; (2) unexplained or inadequately explained failure to seek
23 treatment or to follow a prescribed course of treatment; and (3) the claimant's daily
24 activities."  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn v. Astrue, 495
25 F.3d 624, 637-39 (9th Cir. 2007).[2]  The ALJ also considers "the claimant's work record and

---

[2] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing

- 4 -

1 observations of treating and examining physicians and other third parties regarding, among
2 other matters, the nature, onset, duration, and frequency of the claimant's symptom;
3 precipitating and aggravating factors; [and] functional restrictions caused by the symptoms
4 ... ." Smolen, 80 F.3d at 1284 (citation omitted).

Plaintiff was 32 years old at the time of the ALJ hearing. (Tr. at 35.) She has a high school education. (Tr. at 36.) Her past relevant work consists of sedentary semiskilled jobs (medical billing clerk, receptionist) and light semiskilled jobs (library clerk, filing clerk, information coordinator). (Tr. at 46, 23.)

Plaintiff testified that she stopped working in 2008 when she was fired because of absenteeism due to bladder surgery. (Tr. at 36.) Plaintiff was limited to standing, walking, or sitting for no more than an hour. (Tr. at 38.) She suffered pain in her bladder, going into her lower back and legs, plus "[f]requency, urine, all through the night, all day long. Urge to urine. And it hurts when I urine. I sometimes have to sit there for a while and squeeze it all out. ... Every 30 minutes to an hour. At nighttime, it's sometimes every 15 minutes. It depends." (Tr. at 40-41.)

The vocational expert testified, "Based on her testimony, I believe she would need to have accommodated jobs, so there wouldn't be competitive work." (Tr. at 47.) Even assuming the exertional limitations Plaintiff described, regarding sitting or standing, the vocational expert testified that an hourly bathroom break, lasting five to ten minutes, would preclude sustained employment: "It's been my experience in contacting employers and placing people at jobs, that employers typically want you to be able to stay on task for two-hour increments and then get a ten to 15-minute break. If it's less than two hours, that individual is going to need to be given a specially accommodated job, and it wouldn't fit under the standards of Social Security." (Tr. at 48.)

---

household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

- 5 -

1           Having reviewed the record along with the ALJ's credibility analysis, the Court finds
2    that the ALJ failed to make sufficient credibility findings.  The ALJ recognized that
3    Plaintiff's medically determinable impairments could reasonably be expected to cause the
4    alleged symptoms, but concluded that Plaintiff's statements concerning the intensity,
5    persistence, and limiting effects of the symptoms were not fully credible. (Tr. at 19-22.) The
6    ALJ then proceeded with a general discussion of the medical evidence, but provided no
7    explanation as to how the medical evidence detracted from Plaintiff's credibility.

8           First, the ALJ mischaracterized the treating physicians' statements. Although the ALJ
9    noted that treating physician Sharon Li, M.D., was unable to provide a medical opinion with
10   regard to Plaintiff's ability to do work related activity, the ALJ stated that Dr. Li "opined that
11   the claimant does not have any condition that would limit her ability to do basic work
12   functions." Similarly, with regard to treating physician Paul A. Ostergaard, M.D.'s opinion,
13   the ALJ stated, "Dr. Ostergaard completed a medical source statement *concurring* with Dr.
14   Li's opinions that the claimant's diagnosis does not impede her from performing work
15   activity." (Emphasis added.) However, a close review of the treating physicians' statements
16   reveals a different assessment.

17          Dr. Li's records reveal a diagnosis of chronic interstitial cystitis, with "chronic pain,"
18   and treatments including hydrodistension and bladder biopsies. Dr. Li checked "no" in
19   response to the question, "Can you provide, based on your medical findings, your medical
20   opinion regarding your patient's ability to do work related activities?"  Then, in answering
21   an open-ended question, "Are there any other conditions that limit this individual's ability
22   to do work related activities," Dr. Li checked "no" – meaning there were no conditions other
23   than interstitial cystitis. The fact that Dr. Li opined that no other condition would limit work
24   activity, is not an affirmative opinion on whether the chronic interstitial cystitis would cause
25   work related limits.

26          Like Dr. Li, Dr. Ostergaard completed the same form, and also answered "no" in
27   response to the question, "Can you provide, based on your medical findings, your medical
28   opinion regarding your patient's ability to do work related activities?" He also checked "no"

1  – again meaning there were no conditions other than interstitial cystitis – in answering the
2  question, "Are there any other conditions that limit this individual's ability to do work related
3  activities?"

4  Dr. Li never opined chronic interstitial cystitis would not cause any work related
5  limitations; he only declined to rate exertional work capacities. Thus, contrary to the ALJ's
6  findings, there was nothing for Dr. Ostergaard to "concur" with despite the ALJ's assertion
7  that Dr. Ostergaard agreed with Dr. Li.

8  Lastly, with regard to the medical evidence relied upon by the ALJ to detract from
9  Plaintiff's credibility, the ALJ asserted that treating physician Anthony Lemanski, M.D.,
10 opined that Plaintiff "had no physical disability." A review of the cited record reveals that
11 Dr. Lemanski made that statement under the "Social History" section of Plaintiff's records
12 – not in the context of any functional assessment or medical opinion as the ALJ implies.

13 After reciting two pages of medical evidence, the ALJ found that based on his "review
14 of the overall record," Plaintiff's testimony was "not fully credible with regard to the severity
15 and extent of her symptoms." The ALJ then listed Plaintiff's various routine activities, such
16 as attending to personal care, preparing meals, household chores, shopping, driving, and
17 handling finances. However, the ALJ gave no indication as to what activities were at odds
18 with Plaintiff's reported symptoms. The ALJ did not find – and the record does not
19 demonstrate – that a substantial part of a typical day was spent engaged in activities
20 inconsistent with Plaintiff's specific disabling limitations.

21 The ALJ then listed Plaintiff's exertional capacities for standing, walking, and sitting,
22 etc., and concluded that the "ability to perform such activities is inconsistent with the
23 claimant's allegations of disability." But, Plaintiff's claim is not founded on exertional, or
24 strength-related limitations, but rather on nonexertional limitations of pain and frequent
25 interruptions due to urgent needs to use the bathroom. And, as noted by the vocational
26 expert, the need for such urgent and frequent bathroom breaks would not be tolerated in the
27 workplace.

28

1        The ALJ found, "The claimant's testimony that she has to use the bathroom every 30
2 minutes to an hour is not supported by the medical evidence overall. The claimant's physical
3 disorder can be accommodated by normal breaks." The ALJ, however, failed to give any
4 indication of what "medical evidence overall" was at odds with Plaintiff's need for frequent
5 bathroom breaks. As such, this rationale fails for lack of specificity. See Embrey v. Bowen,
6 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by
7 sufficient objective findings does not achieve the level of specificity our prior cases have
8 required ... The ALJ must do more than offer his own conclusions. He must set forth his own
9 interpretations and explain why they, rather than the doctors', are correct."). Furthermore,
10 it is error to discount the severity of a claimant's symptoms based on lack of objective
11 medical evidence alone. See Lester, 81 F.3d at 834 ("Once the claimant produces medical
12 evidence of an underlying impairment, the Commissioner may not discredit the claimant's
13 testimony as to subjective symptoms merely because they are unsupported by objective
14 evidence.").

15        In sum, the Court finds that in rejecting Plaintiff's subjective complaints the ALJ
16 failed to support his decision to discredit Plaintiff's allegations with specific, clear and
17 convincing reasons and, therefore, the Court finds error. The Ninth Circuit has held that
18 evidence should be credited as true, and an action remanded for an award of benefits, where
19 (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) no
20 outstanding issues remain that must be resolved before a determination of disability can be
21 made, and (3) it is clear from the record that the ALJ would be required to find the claimant
22 disabled were the rejected evidence credited as true. See, e.g., Varney v. Sec'y of HHS, 859
23 F.2d 1396, 1400 (9th Cir. 1988); Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Orn,
24 495 F.3d 625, 640 (9th Cir. 2007). The Court has considered Plaintiff's testimony coupled
25 with the testimony of the vocational expert in this matter. After applying the credit-as-true
26 rule to the improperly discredited evidence, no outstanding issue remains to be resolved
27 before determining that Plaintiff is entitled to benefits. Because it is clear that the ALJ would
28 be required to find Plaintiff disabled, see Benecke, 379 F.3d at 593-95, the Court will remand

1  the case for an award of benefits.  See Orn, 495 F.3d at 640 (remanding for an award of
2  benefits where it was "'clear from the record that the ALJ would be required to determine
3  the claimant disabled'") (citation omitted).  Given this ruling, the Court declines to reach
4  Plaintiff's remaining arguments.

## V.  CONCLUSION

For the reasons discussed in this Order, the Commissioner's decision will be vacated and this matter will be remanded for an award of benefits.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is **VACATED** and this matter is **REMANDED** to the Commissioner for an award of benefits as set forth in this Order;

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly.  The judgment will serve as the mandate of this Court.

DATED this 1st day of February, 2016.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge